UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PATRICIA BALABAN,

    Plaintiff,

v.

                                    Case No.: 2:23-cv-12-JLB-NPM

BRANDON WINTERS, and
THE CITY OF FORT MYERS,

    Defendants.
_____/

## ORDER

This matter comes before the Court on Defendants the City of Fort Myers and Brandon Winters's Motions to Dismiss the Third Amended Complaint. (Docs. 52, 53). Plaintiff, Patricia Balaban, responded to each motion. (Docs. 57, 58). For the reasons set forth below, the City's Motion to Dismiss is **GRANTED** and Mr. Winters's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

## BACKGROUND[1]

Defendant Brandon Winters is a natural person who resides in the state of Florida. (Doc. 48 ¶ 2). Defendant, the City of Fort Myers ("the City"), is a

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted). Accordingly, this background section relies on the facts recited in the Third Amended Complaint.

1

municipality. (Doc. 48 ¶ 3). The City employed Mr. Winters as a police officer in September 2020. (Doc. 48 ¶¶ 5–8).

Plaintiff, Patricia Balaban, is a natural person who also resides in Florida. (Doc. 48 ¶ 1). Plaintiff is a law enforcement officer who was employed by Charlotte County. (Doc. 48 ¶¶ 4, 14). Charlotte County is not a named Defendant in Plaintiff's lawsuit.

Ms. Balaban and Mr. Winters had a consensual intimate relationship that ended in September 2020. (Doc. 48 ¶ 6). After the breakdown of the relationship, Plaintiff alleges that Mr. Winters engaged in behavior that was unwelcome by her, including: following and harassing Plaintiff; sending Plaintiff unwanted and explicit text messages; leaving notes of a sexual nature at Plaintiff's residence and on her car; and telephoning her. (Doc. 48 ¶ 7). Mr. Winters carried out this conduct while he was on duty as a police officer for the City. (Doc. 48 ¶ 8).

At some point after the unwelcome conduct began, Plaintiff informed the City and "requested that the matter be investigated and prosecuted." (Doc. 48 ¶ 10). In response, the City placed Mr. Winters on administrative leave and conducted an investigation. (Doc. 48 ¶ 11). As a result of the investigation, the City, in or around December 2021, terminated Mr. Winters's employment. (Doc. 48 ¶ 11).

After Mr. Winters's termination, the City reported to Plaintiff's employer, Charlotte County, that Plaintiff had "engaged in 'conduct unbecoming a law enforcement officer' by engaging in sex" with Mr. Winters. (Doc. 48 ¶ 14).[2] Plaintiff

---

[2] Plaintiff does not identify the person who allegedly made this report to Charlotte

claims that this report "largely" caused the Charlotte County Sheriff to take an "adverse employment action" against her. (Doc. 48 ¶ 14).

## PROCEDURAL BACKGROUND

Plaintiff filed her Complaint on January 9, 2023, initially naming Mr. Winters and the "Fort Myers Police Department" as the defendants. (Doc. 1). On February 1, 2023, the City filed a Motion to Dismiss the Complaint (Doc. 11), arguing that the "Fort Myers Police Department" was not an entity subject to suit. (Doc. 11 at 3–4). Plaintiff then filed an Amended Complaint which added the "City of Fort Myers" as a defendant. (Doc. 14). In response, the City filed a Motion to Dismiss the Amended Complaint (Doc. 16). Thereafter, Plaintiff filed a Second Amended Complaint (Doc. 25)[3]. Both the City and Mr. Winters filed Motions to Dismiss the Second Amended Complaint (Docs. 29, 31). Plaintiff then sought, and was granted, leave to file a Third Amended Complaint (the "TAC"), which is the operative complaint here. (Docs. 36, 46, 48). Defendants have both filed Motions to Dismiss the TAC (Docs. 52, 53), and Plaintiff has filed responses to same. (Docs. 57, 58).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to

---

County.
[3] Plaintiff removed the "Fort Myers Police Department" as a defendant.

3

"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted). This standard of plausibility is met when the plaintiff pleads enough factual content "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When reviewing a motion to dismiss, courts must accept all factual allegations contained in the complaint as true and view the facts in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Legal conclusions, however, are "not entitled to the assumption of truth." *Ashcroft*, 556 U.S. at 680. In fact, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## DISCUSSION

### I. Plaintiff's Section 1983 Claim Against Mr. Winters (Count II)

Section 1983 of Title 42 of the United States Code "provides a cause of action to a plaintiff who can prove that a defendant acting under color of state law deprived [her] of a right, privilege, or immunity protected by the laws or Constitution of the United States." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016). "No § 1983 claim can succeed without some violation of rights committed under color of state law." *Charudattan v. Darnell*, 510 F. Supp. 3d 1101, 1107 (N.D. Fla.) (internal quotations omitted), *aff'd*, 834 F. App'x 477 (11th Cir. 2020).

4

"[M]erely private conduct, no matter how discriminatory or wrongful," is not actionable under section 1983. *Id.* (internal quotations omitted). This is true even when the defendant is a public employee. *Myers v. Bowman*, 713 F.3d 1319, 1329 (11th Cir. 2013) ("Not all acts by state employees are acts under color of law . . . and acts of officers in the ambit of their personal pursuits are not done under color of law.") (internal quotations omitted).

"A defendant acts under color of state law when []he deprives the plaintiff of a right through the exercise of authority that []he has by virtue of h[is] government office or position." *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). The dispositive issue is "whether the defendant was exercising the power []he possessed based on state authority or was acting only as a private individual." *Id.*

Here, Plaintiff contends that Mr. Winters was acting under color of state law when he harassed her because the harassment took place "during times in which he was on duty as a law enforcement officer." (Doc. 48 ¶ 8). The Court disagrees that Plaintiff's complaint sufficiently alleges a section 1983 violation. Mr. Winters's alleged conduct—contacting and following a former sexual partner—does not implicate section 1983 simply because it occurred while he was on duty as a police officer. It cannot be said that Mr. Winters's obviously private conduct was made possible only because he was clothed with the authority of state law. To the contrary, Mr. Winters would have been equally capable of sending Plaintiff unwanted text messages, calling her telephone, and following her, if he were a

5

member of the general public and not a police officer.  At bottom, Mr. Winters facilitated his personal, private conduct while he happened to be on duty as a police officer.  Any person could have engaged in this conduct during his or her workday without serving as a police officer.

Because Plaintiff has not sufficiently pleaded that Mr. Winters was acting under color of state law, her section 1983 claim against Mr. Winters (Count II) is dismissed.

## II.  Plaintiff's Section 1983 Claim Against the City (Count III)

Plaintiff also attempts to state a section 1983 claim against the City.  A municipality can be liable under section 1983 if "action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978).  A municipality is not liable simply because it employs a tortfeasor.  *See id.*  Therefore, a plaintiff must prove: "(1) that h[er] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

Plaintiff offers three potential bases to support her section 1983 claim against the City: (1) a violation of her Fourteenth Amendment equal protection rights, (2) a deprivation of her Fourteenth Amendment due process rights, and (3) retaliation in violation of her First Amendment Rights.  (Doc. 48 ¶ 36).  Plaintiff's theories fail for multiple reasons.

### A. Equal Protection

"To properly plead an equal protection claim, a plaintiff must allege that, through state action, similarly situated persons are treated disparately." *Austin v. City of Montgomery*, 353 F. App'x 188, 191 (11th Cir. 2009); *see also Dibbs v Hillsborough Cty., Fla.*, 67 F. Supp. 3d 1340, 1354 (M.D. Fla. 2014), *aff'd*, 625 F. App'x 515 (11th Cir. 2015). Plaintiff must therefore allege: "(1) that [she was] treated differently from other similarly situated individuals, and (2) that [the City] unequally applied a facially neutral [policy]for the purpose of discriminating against [her]." *Campbell v. Rainbow City*, 434 F.3d 1306, 1313–14 (11th Cir. 2006). Plaintiff asserts that she has sufficiently pleaded this claim by alleging that the City "slow-walk[ed] her complaints about Officer Craig [sic] [and] fail[ed] to refer the matter to prosecution." (Doc. 57 at 6). The Court disagrees.

Plaintiff has not alleged that the City would have investigated allegations similar to hers if they were proffered by a similarly situated male. Nor has Plaintiff alleged that the City would have referred comparable allegations for prosecution if they were made by a similarly situated male. To be sure, Plaintiff alleges that the City has mishandled other females' allegations of workplace sexual harassment in the past, but Plaintiff has—save her allegations regarding Mr. Winters here—not offered one example of the City treating a similarly situated male more favorably than her. (Doc. 48 at 5). For this basic reason, Plaintiff's allegations regarding the City's response to her complaint against Mr. Winters cannot give rise to equal protection claim against the City.

7

Plaintiff also argues that her allegations that the City "retaliat[ed] against her by making a complaint against her to her employer," supports an equal protection claim. (Doc. 57 at 6–7). Plaintiff's position is at odds with the law of this Circuit, which holds that there is "no clearly established right . . . under the equal protection clause to be free from retaliation." *Ratliff v. DeKalb Cnty., Ga.*, 62 F.3d 338, 340 (11th Cir. 1995) (emphasis supplied); *see also Shed v. Univ. of S. Fla. Bd. of Trustees*, No. 8:22-CV-1327-KKM-TGW, 2023 WL 6465883, at *2 (M.D. Fla. Sept. 8, 2023) (collecting cases). Therefore, even accepting all facts as true and construing them in the light most favorable to Plaintiff, the TAC does not state a section 1983 claim that the City violated a clearly established constitutional right under the Equal Protection Clause.

Finally, Plaintiff, as best the Court can discern, also seems to argue that Mr. Winters's alleged sexual harassment of Plaintiff could also constitute an equal protection violation by the City. (Doc. 57 at 5). However, as discussed above, Mr. Winters's sexual harassment was a private act, not carried out under color of state law, and therefore cannot give rise to a section 1983 claim.

### B. Due Process

Plaintiff also argues that the City is liable under section 1983 because it violated her substantive due process rights.[4] Specifically, Plaintiff contends that the City violated her substantive due process rights because it was "deliberately

---

[4] Plaintiff does not claim that the City violated her *procedural* due process rights, so the Court will only consider whether Plaintiff's substantive due process rights were violated. (Doc. 57 at 7).

indifferent to the criminal actions" of Mr. Winters which caused an "unjustifiable intrusion[] into her personal security." (Doc. 57 at 7). The Court construes Plaintiff's argument to mean that the City violated her due process rights when it failed to protect her from Mr. Winters's conduct.

Plaintiff's argument fails because, generally, "a person does not have a constitutional right under the Fourteenth Amendment to be protected from the criminal acts of third parties." *Vaughn v. City of Athens*, 176 F. App'x 974, 977 (11th Cir. 2006) (quoting *Mitchell v. Duval County Sch. Bd.*, 107 F.3d 837, 838 (11th Cir.1997)) (internal quotations omitted). Stated differently, the City's alleged failure to protect Plaintiff could only "rise to the level of a substantive due process violation [] if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hendry County Sherriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003). The Eleventh Circuit has explained that "a substantive due process violation would, *at the very least*, require a showing of deliberate indifference to an extremely great risk of serious injury to someone in [Plaintiff's] position." *Id*. (emphasis added). When considered in light of the Eleventh Circuit's application of these standards, it is clear that the Plaintiff's allegations fall short.

For example, in *Vaughn*, the plaintiff alleged that the defendant-police officers "were deliberately indifferent to a risk of serious harm to him" when they sent him to act as a drug informant, despite having been warned that plaintiff would be killed for participating in the "set [] up." 176 F. App'x at 976–77. The Eleventh Circuit rejected the plaintiff's argument and held that the district court

9

correctly granted the defendant-police officers' motion to dismiss because plaintiff's allegations did "not rise to the level of 'conscience shocking.'" *Id.*; *see also Nix v. Franklin County Sch. Dist.*, 311 F.3d 1373, 1374-79(11th Cir.2002) (determining that teacher's use of live wire in class demonstration, where teacher knew that electricity running through wire was enough to cause death and that students might touch wire, did not shock the conscience to set forth a substantive due process claim).

Here, Plaintiff has not alleged any facts to suggest that Mr. Winters's conduct put her at an "extremely great risk of serious injury" or that the City responded to Plaintiff's complaint in a "conscience shocking" manner. Therefore, the City's response to Plaintiff's report to the City cannot support Plaintiff's section 1983 claim against the City.

### C. First Amendment

To establish a valid First Amendment claim under section 1983, Plaintiff must show: (1) she engaged in constitutionally protected speech, such as her right to petition the government for redress, (2) the City's retaliatory conduct adversely affected that protected speech and right to petition, and (3) a causal connection exists between the City's retaliatory conduct and the adverse effect on Plaintiff's speech and right to petition. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).

When analyzing the second element, courts review an official's retaliatory conduct for adverse effect by "consider[ing] whether his alleged conduct would likely

deter a person of ordinary firmness from the exercise of First Amendment rights." *Echols v. Lawton*, 913 F.3d 1313, 1320 (11th Cir. 2019) (citation and internal quotations omitted). It is not clear (and Plaintiff has not argued) that the City's alleged retaliatory conduct—reporting its negative opinion of Plaintiff's conduct to her employer—would deter a person of "ordinary firmness" from exercising her First Amendment rights. The result may be different if the City were in a position of power over Plaintiff's employment. But, as Plaintiff admits, she was employed by Charlotte County, not the City, and there are no allegations that suggest the City exercised *any* control whatsoever over Plaintiff's employment.

Moreover, even if Plaintiff could establish that the City's conduct had an adverse effect on protected speech, Plaintiff's claim is still due to be dismissed because her allegations do not provide a basis for establishing municipal liability. This is because "[t]he law is clear that a municipality cannot be held liable for the actions of its employees under § 1983 based on a theory of respondeat superior." *Griffin v. City of Opa–Locka,* 261 F.3d 1295, 1307 (11th Cir. 2001) (citing *Monell,* 436 U.S. at 663). Instead, liability arises when a municipal "custom" or "policy," either formal or informal, condones employee misconduct. *Id.* at 1307–08, 1311.

The Eleventh Circuit has recognized two situations giving rise to an informal custom or policy. *Id.* at 1308. "The first is when a practice 'is so permanent and well settled as to constitute a custom or usage with the force of law.' . . . The second is when a municipality tacitly authorizes employee misconduct or displays deliberate indifference towards it." *Howard v. City of Robertsdale*, 168 F. App'x 883, 890 (11th

11

Cir. 2006) (internal quotations omitted). "To establish the existence of a custom, the plaintiff must show a longstanding and widespread practice." *Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 672 (11th Cir. 2016) (citation and internal quotations omitted).

Here, Plaintiff alleges that the City had a "custom, policy and practice" of retaliating against women who complained about male law enforcement officers.[5] (Doc. 48 ¶28). While the TAC alleges that the City has previously retaliated against its *own* employees for lodging complaints of workplace sexual harassment, Plaintiff has not pled any facts to suggest that the City has ever retaliated against a *non-employee* by attempting to interfere with her employment. Plaintiff's allegations cannot establish that the City has a custom or practice of retaliation in this context. *See Dipietro v. City of Hialeah*, 424 F. Supp. 3d 1286, 1297 (S.D. Fla. 2020) (dismissing a First Amendment retaliation claim under section 1983 when the plaintiff failed to allege other instances of the defendant acting "in a similar manner"). The Court therefore concludes that the section 1983 First Amendment retaliation claim against the City is due to be dismissed.

### III. Plaintiff's Intentional Infliction of Emotional Distress Claim (Count I)

Plaintiff invokes this Court's subject matter jurisdiction under original federal question jurisdiction, 28 U.S.C. § 1331, based on Plaintiff's section 1983

---

[5] The TAC does not allege that the City had an official policy of retaliation. Accordingly, the Court assumes that Plaintiff is alleging that the City had an unofficial policy or custom of retaliation.

12

claims.  For the reasons set forth above, Plaintiff's federal claims have been dismissed.  Plaintiff's remaining claim arises under Florida law.  (*See* Doc. 48 at 3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  Accordingly, the Court will decline to exercise its supplemental jurisdiction over this remaining claim.[6]  *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction.").

## **CONCLUSION**

A final note.  The Court does not, in any way, minimize the sensitive personal and adverse professional repercussions of the facts leading to the filing of this case.  The Court's decision is solely based on the law for which this Court is bound to apply.  Although the Court will provide Plaintiff an opportunity to file a ***Fourth*** Amended Complaint here, it is not suggesting that Plaintiff should do so or that this is a preferred route.  The Court will leave the litigation decisions to Plaintiff and her counsel.  That said, unless there are markedly different facts and well-pleaded claims alleged in a Fourth Amended Complaint, the Court—based on the facts laid

---

[6] "The period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d).

out in the first three iterations of Plaintiff's complaint, and the law both cited by the parties and independently identified by the Court—has grave concerns that a survivable section 1983 claim can be properly pleaded. The Court, however, expresses no opinion as to the viability of Florida state law claims, which, absent a freestanding federal claim to establish this Court's subject matter jurisdiction, this Court would not be inclined to address. Such claims are usually best ferreted out in Florida's state courts.

*-Remainder of page intentionally left blank-*

It is hereby **ORDERED**:

1. Defendant Winters's Motion to Dismiss (Doc. 52) is **GRANTED** as to Count I and Count II.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims in Count I.  Count I is therefore **DISMISSED without prejudice.**  Count II is also **DISMISSED without prejudice**.

2. Defendant City of Fort Myers's Motion to Dismiss (Doc. 53) is **GRANTED** as to Count III.  Count III is therefore **DISMISSED without prejudice.**

3. Plaintiff *may*—but is not required to—file a fourth amended complaint within fourteen (14) days of the date of this order. Failure to do so will result in the closure of this case without further notice.

**ORDERED** in Fort Myers, Florida on March 15, 2024.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE